Timothy M. Freudenberger, State Bar No. 138257
tfreud@cdflaborlaw.com
Sarah N. Drechsler, State Bar No. 223820
sdrechsler@cdflaborlaw.com
CARLTON DiSANTE & FREUDENBERGER LLP
2600 Michelson Drive, Suite 800
Irvine, California  92612
Telephone:  (949) 622-1661
Facsimile:  (949) 622-1669

David  L. Terry, North Carolina State Bar No. 11113
dterry@poynerspruill.com
David L. Woodard, North Carolina State Bar No. 19343
dlwoodard@poynerspruill.com
POYNER SPRUILL LLP
301 S. College Street, Suite 2300
Charlotte, North Carolina 28202
Telephone:  (704) 342-5250
Facsimile:  (704) 342-5264

Attorneys for Defendants
ESTES EXPRESS LINES and G.I. TRUCKING
COMPANY dba ESTES WEST

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRADFORD COLEMAN, individually, and on behalf of other members of the general public similarly situated, and as aggrieved employee pursuant to the Private Attorneys General Act ("PAGA"), <br><br> Plaintiffs, <br><br> vs. <br><br> ESTES EXPRESS LINES, INC., a Virginia Corporation; ESTES WEST, a business entity form unknown; G.I. TRUCKING COMPANY; and DOES 1 through 9, inclusive, <br><br> Defendants. | Case No. CV 10-02242 MMM(AJWx) <br><br> Judge Margaret M. Morrow <br> Dept:  780 <br><br> **DEFENDANTS' OPPOSITION TO MOTION FOR ORDER REMANDING MATTER TO STATE COURT** <br><br> Date:   June 14, 2010 <br> Time:  10:30 a.m. <br><br> Action Filed:   December 31, 2009 <br> Removal Date:   March 26, 2010 |

Defendants' Opposition to Motion for
Remand to State Court

# TABLE OF CONTENTS

**Page**

I.   SUMMARY OF ARGUMENT.................................................................1

II.  ARGUMENT...................................................................................3

A.   Defendants Have Established That The Amount In
     Controversy Exceeds Five Million Dollars.................................3

     1.   Defendants Provided Accurate Calculations Based
          on Admissible Evidence Regarding the Putative
          Class. .................................................................................4

          a.   Unpaid meal and rest period premiums............................4

          b.   Waiting time claims........................................................5

          c.   Non-compliant wage statements.......................................5

          d.   Remaining claims. ..........................................................6

     2.   The Cases Cited by Plaintiff Fail to Demonstrate
          That the Evidence Supporting Defendants'
          Calculations is Insufficient. ..............................................7

     3.   Defendants' Method of Calculating the Amount
          Placed in Controversy by Plaintiff's Meal and Rest
          Period Claims is Approved by California Courts. ...............10

     4.   Defendants are Not Required to Provide Evidence of
          Meal and Rest Period Policies or Time or Payroll
          Records...........................................................................11

     5.   Defendants' Properly Limited their Calculations to
          Distinctly Quantifiable Sub-Groups of the Class to
          Improve Accuracy............................................................12

B.   Plaintiff Has Failed To Prove That The Local Controversy
     Exception Applies. .................................................................14

     1.   Plaintiff's Motion to Remand is Facially Insufficient...............15

     2.   Plaintiff Does Not Seek, and Cannot Obtain,
          "Significant Relief" From the Alleged "In-State
          Defendant," Estes West ....................................................16

     3.   The Conduct of Estes West Does Not Constitute a
          "Significant Basis" for the Claims in This Lawsuit..................18

     4.   G.I. Trucking, Inc. d/b/a Estes West is Not a
          California Citizen, But a Citizen of Virginia for
          Purposes of Diversity Under CAFA .......................................22

i

Defendants' Opposition to Motion for Remand to
State Court

381833.1

# TABLE OF CONTENTS (cont.)

**Page**

III.    CONCLUSION..................................................................................................25

Defendants' Opposition to Motion for Remand to
State Court

381833.1

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alvarez v. Limited Express, LLC*, 2007 U.S. Dist. LEXIS 58148 (S.D. Cal. 2007) ................................................................................. 7, 8

*Burnside v. Sanders Ass'n, Inc.*, 507 F. Supp. 165 (N.D. Tex. 1980), aff'd, 643 F.2d 389 (5th Cir. 1981) .......................................... 22, 23

*Cannon Manufacturing Co. v. Cudahy Packaging Co.*, 267 U.S. 333, 45 S. Ct. 250 (1925) ............................................................... 23

*China Basin Properties, Ltd. v. One Pass*, Inc., 812 F. Supp. 1038 (N.D. Cal. 1993) ................................................................. 22

*Compare Evans v. Walter Indus.*, 449 F.3d 1159 (11th Cir. 2006) ....................... 15

*Cox v. Allstate Ins. Co.*, 2008 U.S. Dist. LEXIS 41272, *11 (W.D. Ok. 2009) .................................................................................... 15

*Danjaq, S.A. v. Pathe Communications Corp.*, 979 F.2d 772 (9th Cir. Cal. 1992) ................................................................. 22

*Escoe v. State Farm Fire & Cas. Co.*, 449 F.3d 1159, 2007 U.S. Dist. LEXIS 30088 (E.D. La. 2007) ....................................................... 16

*Evans v. Walter Indus.*, 2006 App. LEXIS 12509 (11th Cir. 2006) ....................... 16

*Frazier v. Alabama Motor Club*, 349 F.2d 456 (5th Cir. 1965) ............................. 23

*Gaus v. Miles, Inc.*, 980 F.2d 564, 1992 U.S. App. LEXIS 30733 (9th Cir. 1992) ................................................................. 9

*Green v. SuperShuttle Int'l, Inc.*, 2010 U.S. Dist. LEXIS 7456 (D. Minn. Jan. 29, 2010) ..................................................... 16, 17, 18

*Guglielmino v. McKee Foods Corp.*, 506 F.3d 696 (9th Cir. 2007) ....................... 3

*Helm v. Alderwoods Group, Inc.*, 2008 WL 2002511, *4 n.3 (N.D. Cal. May 7, 2008) ............................................................. 13, 14

*Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144 (3d Cir. 2009) ........................... 18

*Kearns v. Ford Motor Co.*, 2005 U.S. Dist. LEXIS 41614 (C.D. Cal. 2005) ................................................................................. 21

*Korn v. Polo Ralph Lauren Corp.*, 536 F.Supp.2d 1199 (E.D. Ca. 2008) ............... 3

*Laborer's Clean-Up Contract Administration Trust Fund v. Uriarte Clean-Up Service, Inc.*, 736 F. 2d 516 (9th Cir. 1984) ............................. 23

*Lowdermilk v. U.S. Bank*, 479 F.3d 994, 2007 U.S. App. LEXIS 5168

iii

381833.1

# TABLE OF AUTHORITIES (cont.)

**Page(s)**

(9th Cir. 2007) ................................................................................ 9

*Muniz v. Pilot Travel Ctrs. LLC*, 2007 U.S. Dist. LEXIS 31515 at *4 (E.D. Cal. 2007)........................................................... 3, 10, 11, 12

*Sanchez v. Aviva Life & Annuity Co.*, 2009 U.S. Dist. LEXIS 79712 at 7 (E.D. Cal. 2009) .......................................................................... 15

*Serrano v. 180 Connect, Inc.*, 478 F.3d 1018 (9th Cir. 2007) .................................. 15

*Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 2004 U.S. App. LEXIS 12251 (9th Cir. 2004) .............................................................. 9

*Waters v. Advent Prod. Dev.*, 2008 U.S. Dist. LEXIS 50686, 13 (S.D. Cal. 2008) .................................................................................... 16

**Statutes**

28 U.S.C. § 1332(d)(2) ..................................................................... 3

28 U.S.C. § 1332(d)(4)(A) ................................................... 14, 15, 18

California Business & Professions Code § 17200 ................................... 6

California Labor Code § 203 ............................................................. 5

California Labor Code § 226(a) ......................................................... 5

**Treatises**

Wright, Miller, and Cooper, Federal Practice and Procedure: Civil, § 3625 (1975)................................................................................ 23

Defendants' Opposition to Motion for Remand to State Court

381833.1

1  Defendants Estes Express Lines ("Estes Express") and G.I. Trucking
2  Company, d/b/a Estes West ("Estes West"), (referred to collectively herein as the
3  "Defendants") hereby submit the following Points and Authorities in Opposition to
4  Plaintiff Bradford Coleman's ("Plaintiff's") Motion to Remand.

5  ## I. SUMMARY OF ARGUMENT

6  In his First Amended Complaint ("Complaint"), Plaintiff seeks to recover a
7  variety of damages and penalties on behalf of himself and hundreds of current and
8  former Estes employees, including as alleged: unpaid overtime, unpaid meal period
9  premiums, unpaid rest period premiums, wages not paid timely upon termination,
10 wages not timely paid during employment, non-compliant wage statement penalties,
11 PAGA penalties, and attorney's fees.  In their Notice of Removal, Defendants amply
12 demonstrated that, based on the allegations in the Complaint, the number of putative
13 class members, and the putative class members' hourly rates, Plaintiff had placed
14 more than $14,949,357.37 in controversy.

15 In spite of the multitude of his claims and the size of the putative class,
16 Plaintiff now argues in his Motion to Remand that Defendants have failed to produce
17 sufficient evidence to establish the threshold five million dollars in controversy for
18 removal under the Class Action Fairness Act ("CAFA").  Notably, in an apparent
19 attempt to have his cake and eat it too, Plaintiff adds the caveat that he "does not by
20 [his] Motion contend that the amount in controversy may not exceed five million
21 dollars" (Plaintiff's Memorandum of Law in Support of Motion to Remand, ECF
22 Doc. No. 16-1, ECF p. 5, Footnote 3) (hereinafter "Plaintiff's Memo").

23 Plaintiff's argument challenging Defendants' calculation of the amount in
24 controversy has no merit.  Defendants presented solid, irrefutable, "summary
25 judgment-type" evidence regarding the putative class and applied a methodology
26 approved by California federal courts to calculate the amount placed in controversy
27 by Plaintiff's claims in his Complaint.  Plaintiff cannot demonstrate any error in
28 Defendants' calculations, so he relies on inapplicable case law and nonsensical

1  arguments to cast doubt on Defendants' methodology.  Plaintiff even goes so far as

2  to claim that Defendants did not meet their burden of demonstrating the amount in

3  controversy because they should have included even more potential class members in

4  their calculation, thereby raising the amount in controversy even higher than

5  $14,949,357.37.[1]  In this and all other arguments in his Motion, Plaintiff fails to

6  make a valid point.

7         Plaintiff similarly fails in his attempt to demonstrate that the "local

8  controversy exception" to CAFA applies because Estes West is a California

9  defendant.  Plaintiff's assertion that Estes West is a citizen of California for diversity

10  purposes is not supported by facts or law.  As demonstrated herein, Estes West is an

11  integrated subsidiary and alter ego of Estes Express Lines, a Virginia Corporation,

12  and is therefore a citizen of Virginia for diversity purposes.

13         Additionally, Plaintiff does not even attempt to demonstrate in his Motion that

14  two of the necessary requirements for the local controversy exception exist in this

15  case, namely that (1) Plaintiff seeks "significant relief" from the in-state defendant,

16  and that (2) the conduct of the alleged in-state defendant forms a "significant basis"

17  for the claims asserted.  Even if Plaintiff had attempted to meet his burden of proof

18  on these issues, he would have failed.  As demonstrated herein, Estes West gathers

19  no revenues, pays no bills and does not pay its employees, but for money directly

20  from Estes Express, so any relief obtained by Plaintiff and the putative class would

21  necessarily come from out-of-state defendant Estes Express.  Also, Estes Express is

22  solely responsible for all the acts, decisions, practices, and procedures that the

23  Plaintiff claims are unlawful, so by his Complaint Plaintiff seeks significant relief

24  from out-of-state defendant Estes Express.

25         For these reasons, the Court should deny Plaintiff's Motion to Remand.

26

27

28

---

[1] Plaintiff never sought any discovery to ascertain any facts or evidence that would support his position that the amount in controversy is less than five million dollars.  Indeed, based on the Complaint, there is no possible way to reduce the amount in controversy below that threshold.

2                    Defendants' Opposition to Motion for
                     Remand to State Court

## II. ARGUMENT

A. **Defendants Have Established That The Amount In Controversy Exceeds Five Million Dollars.**

Plaintiff alleges in his Motion to Remand that Defendants have not met their burden of establishing that the amount in controversy exceeds five million dollars as required for removal under CAFA by 28 U.S.C. § 1332(d)(2).[2] As demonstrated below, this argument is baseless.

As conceded by Plaintiff in his Motion to Remand, when it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled, the removing defendant must establish by a preponderance of the evidence that the amount in controversy exceeds $5 million. *Guglielmino v. McKee Foods Corp.,* 506 F.3d 696, 699 (9th Cir. 2007); (Plaintiff's Memo p. 4). "The question [with regard to the jurisdictional amount in controversy] is not what damages the plaintiff will recover, but what amount is 'in controversy' between the parties.'" *Korn v. Polo Ralph Lauren Corp.*, 536 F.Supp.2d 1199, 1205 (E.D. Ca. 2008). Therefore, Defendants' complete denial of the allegations of misconduct contained in Plaintiffs' Complaint, and of any damages actually suffered by the Plaintiff or the putative class, has no bearing on the determination of the amount in controversy.

Also, where a plaintiff alleges general, nonspecific violations of the Labor Code, the defendant is entitled to assume a 100% violation rate for the entire putative class for the purpose of determining the amount in controversy. *See Muniz v. Pilot Travel Ctrs. LLC*, 2007 U.S. Dist. LEXIS 31515 at *4 (E.D. Cal. 2007) ("Plaintiff is the 'master of [her] claim[s],' and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative

---

[2] Plaintiff apparently concedes that the other jurisdictional prerequisites for removal under CAFA exist.

Defendants' Opposition to Motion for Remand to State Court

381833.1

1 class or the damages sought."). Thus, for purposes of analyzing the amount in

2 controversy, it is appropriate to consider the maximum amount that could potentially

3 be recovered under each of the claims alleged.

4     **1.**    **Defendants Provided Accurate Calculations Based on Admissible**

5         **Evidence Regarding the Putative Class.**

6       Defendants' calculation of the amount in controversy is explained in detail in

7 the Notice of Removal (ECF Doc No. 1) and the supporting Declaration of Brenda

8 Gerczak, Director of Human Resources (ECF Doc. No. 2) (hereinafter "Gerczak

9 Declaration").

10     **a.**    **Unpaid meal and rest period premiums.**

11       Defendants explain in their Notice of Removal that, to simplify the calculation

12 of the amount Plaintiff placed in controversy under the meal and rest period claims,

13 Defendants conservatively limited their consideration to one group of putative class

14 members, namely Pick Up and Delivery Drivers ("P&D Drivers"), which is the

15 position formerly held by the named Plaintiff, to the exclusion of hundreds of other

16 employees who may also be potential class members. (Notice of Removal ¶¶ 18-21.)

17 Further, Defendants considered only the number of P&D Drivers who worked the

18 entire year under scrutiny. (Id.) Defendants then provided the specific numbers of

19 P&D Drivers employed for the full year for each of the relevant years and the

20 average hourly wage for all P&D Drivers, which is at least $21.61.[3] (Id.) Using the

21 pay rates of all P&D Drivers over the entire four year period covered by the putative

22 class claim, Defendants determined that the amount placed in controversy by the

23 Plaintiff on these claims alone is at least $9,484,196.80.[4] By focusing its calculations

---

[3] This average excludes any consideration of incentive compensation the potential class members may have earned, which would necessarily increase the average hourly rate if included. (Gerczak Declaration ¶ 10.)

[4] $4,742,098.40 has been placed in controversy by the Plaintiff on the meal period claim for the P&D Drivers who worked entire calendar years in 2006 through 2009. [2006- $21.61/hr x 5 days/wk x 52 weeks/yr x 264 class members = $1,483,310.40] [2007- $21.61/hr x 5 days/wk x 52 weeks/yr x 266 class members = $1,494,547.60] [2008- $21.61/hr x 5 days/wk x 52 weeks/yr x

Defendants' Opposition to Motion for
Remand to State Court

381833.1

1   only on a well defined subgroup of putative class members, and, within that

2   subgroup, considering only those employees who worked the entire year at issue,

3   Defendants removed any ambiguity or doubt over the accuracy of the number of

4   putative class members used to calculate the amount in controversy over the relevant

5   time period.  The only thing that can be said about the accuracy of Defendants'

6   calculation is that it underestimates the amount in controversy.  Plaintiff cannot

7   dispute this.

8   **b.   <u>Waiting time claims.</u>**

9           With respect to Plaintiff's claim for waiting time penalties under California

10  Labor Code § 203, Defendants explained in the Notice of Removal that their

11  calculation of the amount in controversy only considered P&D Drivers whose

12  employment ended during the three year period prior to the filing of the Complaint.

13  Defendants then provided the exact number of P&D Drivers whose employment

14  ended in this time period (148 P&D Drivers).  (Notice of Removal ¶ 23.)  Defendants

15  then calculated the wages owed using the figure of 148 formerly employed P&D

16  Drivers and using the average hourly rate of $21.61, and concluded that Plaintiff

17  placed at least $705,739.37 in controversy for alleged failure to pay waiting time

18  penalties to putative class members.[5]   Again, Plaintiff cannot refute this.

19  **c.   <u>Non-compliant wage statements.</u>**

20          With regard to the penalties that Plaintiff seeks under Section 226(a) of the

21  California Labor Code for the Estes Defendants' alleged failure to provide proper

22  ─────────────────────

23  264 class members = $1,483,310.40]  [2009- $21.61/hr x 5 days/wk x 52 weeks/yr x 271 class
    members = $1,522,640.60].  In addition, because the damages calculation for the rest period claim

24  is the same as the meal period claim, Plaintiff has placed an additional $4,742,098.40 in
    controversy under the rest period claim. (Notice of Removal ¶ 21, Gerczak Declaration ¶ 12.)

25  [5] 2007: (Ave. Hourly Rate: $21.61) x (Ave. Hours Worked Per Day: 7.49) x 30 days x (Number of
    Putative Class Members: 57) = $276,778.71.]  [2008: (Ave. Hourly Rate: $21.61) x (Ave. Hours

26  Worked Per Day: 7.57) x 30 days x (Number of Putative Class Members: 51) = $250,289.18.]
    [2009: (Ave. Hourly Rate: $21.61) x (Ave. Hours Worked Per Day: 6.89) x 30 days x (Number of

27  Putative Class Members: 40) = $178,671.48.]  Total for all three years:  $276,778.71 + 250,289.18
    + 178,671.48 = $705,739.37.  (Gerczak Declaration ¶ 11, Notice of Removal ¶ 23.)

28

Defendants' Opposition to Motion for
                                                            Remand to State Court

381833.1

1  wage statements, Defendants state in the Notice of Removal that they conservatively

2  chose to consider only employees who were employed for the entire 12 month period

3  prior to the filing of the Complaint (for whom the claimed penalties would clearly

4  reach the $4,000 maximum if liability was established).  (Notice of Removal ¶ 16.)

5  The Gerczak Declaration then specifically identified that the number of putative class

6  members that were employed for the entire 12 month period prior to the filing of the

7  Complaint is 554.[6]  (Gerczak Declaration ¶¶ 8-9).  Multiplying the maximum penalty

8  sought by the putative class of 554 results in an amount in controversy of

9  $2,216,000.  (Id.)

10  **d.   Remaining claims.**

11  Finally, Defendants' Notice of Removal explains that the calculation of the

12  total amount in controversy does not even take into consideration damages relating to

13  the alleged unpaid overtime, or violation of California Business & Professions Code

14  §§ 17200, *et seq*.).  Nor does it include calculation of attorneys' fees or PAGA

15  penalties. (Notice of Removal ¶ 24.)  That these claims have been alleged and place

16  additional damage and penalty amounts in controversy, which would have to be

17  added to the totals presented by Defendants, bolsters Defendants' showing that the

18  amount in controversy in this case exceeds five million dollars.  It also demonstrates

19  that Defendants made a significant effort to limit speculation their calculation of the

20  amount in controversy.

21  The allegations of the Complaint combined with the facts presented in the

22  Declaration of Brenda Gerczak show that the amount in controversy exceeds five

23  million dollars.  Broken down by claim, the amount in controversy, at a minimum, is

24  as follows:

25  //

26
27  [6] An additional approximately 202 hourly paid employees were employed at various times during 2009 and would also potentially be included in the putative wage statement class. (Gerczak Declaration ¶ 8.)

28

1  | Claim Two (Unpaid Meal Period Premiums) | $5,983,809
   | Claim Three (Unpaid Rest Period Premiums) | $5,983,809
2  | Claim Four and/or Five (Waiting Time Claims) | $705,739.37
   | Claim Six (Non-Compliant Wage Statements) | $2,276,000
3  | Total | $14,949,357.37

4

5  ## 2.   The Cases Cited by Plaintiff Fail to Demonstrate That the Evidence

6  ## Supporting Defendants' Calculations is Insufficient.

7          In his Motion to Remand, Plaintiff admits that he does not possess any

8  evidence that would call into question the accuracy of the figures supplied by

9  Defendants for hourly rates and numbers of putative class members (Plaintiff's

10 Memo p. 5.)  Faced with the unassailable evidence presented by Defendants, Plaintiff

11 takes select quotes from several cases out of context (cases which actually support

12 removal based on Defendants' showing) and attempts to convince the court of non-

13 existent deficiencies in Defendants' calculations.[7]

14         First, Plaintiff argues that Defendants' based their calculation of the amount in

15 controversy on assumptions that "lack supporting evidence of the 'summary

16 judgment-type' required by *Alvarez v. Limited Express, LLC*, 2007 U.S. Dist. LEXIS

17 58148 (S.D. Cal. 2007)."  (Plaintiff's Memo p. 10.)  This argument is meritless.  In

18 *Alvarez*, the court held that the basic calculation methodology used by Defendants is

19 sound, but it determined that the *Alvarez* defendant's notice of removal involved two

20 evidentiary problems, neither of which exists in the instant case.  First, the *Alvarez*

21 defendant's calculations were based upon an assumption that "the average class

22 member worked six months."  *Id.*  That is not the case here.  In this case, Defendants

23 considered, and produced competent evidence regarding only those employees who

24 fell within Plaintiff's definition of the class and who were verified to have actually

25 worked a full calendar year.  See Notice of Removal ¶ 16 ("This calculation excludes

26 _____

27 [7] As earlier noted, Plaintiff sought no discovery and exercised absolutely no efforts to ascertain the amount in controversy, undoubtedly so that he would not be constrained by evidence and could make the vague and baseless allegations he now presents.

28

381833.1

1  employees who were employed for only a portion of the 12 month period prior to

2  filing of the Complaint."); Id. ¶ 20 ("For the purpose of this calculation, the Estes

3  Defendants have, again, conservatively considered only those P&D Drivers who

4  were employed for the full calendar year under scrutiny.")

5       The other evidentiary problem encountered in *Alvarez* related to the size of the

6  proposed class.  The defendant estimated the number of putative class members

7  based upon documents filed in a prior lawsuit involving a similar—but not

8  identical—class.  The *Alvarez* court held that the defendant could not use those

9  documents to estimate the size of the class, because "[i]f the number of members in

10  the [prior lawsuit's] class equals the number of putative class members here, it is a

11  mere coincidence."  There is no similar failing in the case at bar.  Here, Defendants

12  know for a fact, and have provided competent evidence, based on employment

13  records, that the putative class consists of at least 569 members (and certainly

14  consists of more employees who did not work a full calendar year during the time

15  period at issue).  *Id.* at * 10.  Defendants' damages calculations are based upon this

16  conservative, minimal number of putative class members, and are amply supported

17  by the Gerczak Declaration, which explains at length the basis for Defendants'

18  calculations.  Thus, there is no ambiguity or uncertainty about the number of putative

19  class members used to calculate the amount in controversy, or the amount of time

20  they worked, nor, as described above, is there any doubt about the accuracy of the

21  average hourly wage of those putative class members.  In sum, Defendants have

22  produced competent, unimpeachable evidence of every variable or factor necessary

23  to determine the amount that Plaintiff has placed in controversy, and the exact

24  methodology employed by Defendants to arrive at the amount in controversy mirrors

25  the methods approved by the court in *Alvarez*.

26       It must also be noted that Plaintiff misguidedly cites to several selective

27  quotations from case law in an illusory attempt to undermine the evidence used by

28  Defendants.  In examining the cases cited by Plaintiff, it is immediately apparent that

8

1    they actually approve both the evidence and methodology used by Defendants to

2    calculate the amount in controversy.  For example, Plaintiff cites *Valdez v. Allstate*

3    *Ins. Co.*, 372 F.3d 1115, 2004 U.S. App. LEXIS 12251 (9th Cir. 2004) for the

4    proposition that the evidence produced by Defendants of the amount in controversy

5    was speculative.  (Plaintiff's Memo p. 9.)  The "evidence" criticized in *Valdez*,

6    however, was not at all comparable to the detailed facts presented by Defendants.  In

7    *Valdez*, the defendant failed to produce any evidence whatsoever of the amount in

8    controversy, and instead merely stated "upon information and belief, [the defendant]

9    submits that the amount in controversy . . . exceeds $75,000."  *Valdez*, 2004 U.S.

10   App. LEXIS 12251 at *15.  Here, Defendants have strictly complied with the Court's

11   holding in *Valdez* by not only providing evidence in the form of a sworn declaration,

12   but also providing in that declaration a detailed basis, with accurate numbers of

13   employees, hourly rates and an accurate time period, for the computation of the

14   amount in controversy, not just an estimation "upon information and belief."

15   Similarly, Plaintiff cites *Lowdermilk v. U.S. Bank*, 479 F.3d 994, 2007 U.S. App.

16   LEXIS 5168 (9th Cir. 2007), where the removing party filed a declaration asserting a

17   number of employees that had been terminated but did not specify how many of

18   those employees were hourly.  *Id* at *17.  Again, the Declaration of Brenda Gerczak

19   that was filed in support of Defendants' Notice of Removal does not suffer from the

20   defects present in *Lowdermilk* or the other cases cited by Plaintiff. [8]  In all of the

21   cases cited by Plaintiff, there were serious deficiencies in the evidence provided by

22   the removing parties—none of which are present here.  Defendants have submitted

23

24   [8] Plaintiff also cites *Gaus v. Miles, Inc.*, 980 F.2d 564, 1992 U.S. App. LEXIS 30733 (9th Cir.
     1992) for the proposition that Defendants' calculations are speculative.  In *Gaus*, the party seeking
25   removal provided no facts whatsoever and simply alleged "the matter in current controversy . . .
     exceeds the sum of $50,000," without setting forth in his removal petition the underlying facts from
26   the complaint that supported his assertions.  *Id.*  As has been discussed at length, Defendants
     determined and presented evidence of an accurate number of class members, their average hourly
27   rate and the time they worked – all that is necessary to calculate the amount Plaintiff has placed in
     controversy.

28

Defendants' Opposition to Motion for
                                                                              Remand to State Court

381833.1

1  "summary judgment type evidence," of the type approved of by California courts,

2  that is more than sufficient to support their calculations.  Accordingly, the Court

3  should reject Plaintiff's argument that Defendants have failed to establish a minimum

4  amount in controversy of five million dollars.

5  **3.**  **Defendants' Method of Calculating the Amount Placed in**

6  **Controversy by Plaintiff's Meal and Rest Period Claims is**

7  **Approved by California Courts.**

8      Next, Plaintiff's Motion challenges Defendants' calculation of the amount

9  placed in controversy by the meal and rest period claims.  Plaintiff observes that

10  Defendants "assume that every prospective class member missed one meal period

11  and one rest period everyday [sic] for five days a week during the four-year class

12  period." (Plaintiff's Memo p. 10.)   The law, however, is clear that this methodology

13  is proper.  In *Muniz,* the California District Court analyzed a similar argument as

14  follows:

15      Plaintiff alleges no facts specific to the circumstances of her or the class
      members allegedly missed meal and/or rest periods … or defendant's
16      failure to provide itemized wage statements.  Instead, plaintiff alleges a
      common course of conduct in violation of the law resulting in injury to
17      herself and every other hourly employee employed by defendant in the
      State of California in the four years preceding the filing of the
18      Complaint.  Allegedly, plaintiff and class members "were not always
      paid all wages and overtime due by the Defendant."  Allegedly, they
19      were "not always provided lawful meal periods."  Allegedly, they were
      "not always provided lawful rest periods." […]
20
21      As these allegations reveal, plaintiff includes no fact-specific allegations
      that would result in a putative class or violation rate that is discernibly
22      smaller than 100%, used by defendant in its calculations. Plaintiff is the
      "master of her claims" and if she wanted to avoid removal, she could
23      have alleged facts specific to her claims which would narrow the scope
      of the putative class or the damages sought.  She did not.

24

25  *Muniz*, 2007 U.S. Dist. LEXIS 31515 at *11-14 (E.D. Cal. April 30, 2007) (internal

26  citations omitted and emphasis supplied).

27      Here, Plaintiff makes essentially the same allegations in his Complaint.  For

28  example, with respect to the meal-period claim, Plaintiff alleges, "[d]uring the

                                    10              Defendants' Opposition to Motion for
                                                   Remand to State Court

1    relevant time period, Plaintiff and class members who were scheduled to work for a

2    period of time no longer than six (6) hours, and who did not waive their legally-

3    mandated meal periods by mutual consent, were required to work for periods longer

4    than five (5) hours without an uninterrupted meal period of not less than thirty (30)

5    minutes." (Complaint ¶ 53.)  Plaintiff repeats substantially similar versions of this

6    allegation in Paragraphs 54 through 56 of the Complaint, culminating with the

7    general allegation in Paragraph 57 that, "[d]uring the relevant time period,

8    Defendants willfully required Plaintiff and class members to work during meal

9    periods and failed to compensate Plaintiff and class members for work performed

10    during meal periods."

11         The same is true for the rest-period claim.  In Paragraph 66 of the Complaint,

12    Plaintiff simply alleges that "Defendants required Plaintiff and class members to

13    work four (4) or more hours without authorizing or permitting a ten (10) minute rest

14    period per each four (4) hour period worked."  In Paragraph 67, Plaintiff similarly

15    alleges that "Defendants willfully required Plaintiff and class members to work

16    during rest periods and failed to compensate Plaintiff and class members for work

17    performed during rest periods."

18         These are substantively the same allegations made in *Muniz*.  As in *Muniz*,

19    Plaintiff Coleman "includes no fact-specific allegations that would result in a

20    putative class or violation rate that is discernibly smaller than 100%, used by

21    defendant in its calculations."  Based upon these allegations, Plaintiff cannot

22    challenge Defendants' calculation methodology based on one missed meal period

23    and rest period per day.

24    **4.**     **Defendants are Not Required to Provide Evidence of Meal and Rest**

25         **Period Policies or Time or Payroll Records.**

26         Third, Plaintiff argues in his Motion that Defendants' amount in controversy

27    calculation is deficient because "there is no evidence of Defendants' meal or rest

28    break policies, nor are Defendants' damages estimates supported with reference to

                                    11

1  objective (and easily available) evidence such as prospective class members' time

2  records or payroll records." (Plaintiff's Memo p. 10.)  In *Muniz*, the California

3  District Court expressly rejected the same argument, stating as follows:

> Plaintiff [argues that] defendant's removal is deficient because defendant did not produce the underlying documents which support its calculations. Plaintiff contends that … defendant was obligated to produce documents setting forth the precise number of employees in each putative class or subclass alleged and the precise calculation of damages alleged.
>
> Plaintiff's argument is unavailing. There is no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation.  Rather, it is defendant's burden to produce underlying facts showing only that it is more likely than not that the amount in controversy exceeds $5,000,000.00, assuming the truth of the allegations plead in the Complaint.  Defendant met that burden by filing the Cheatham and Sims declarations in support of its Notice of Removal showing that the amount in controversy [exceeds $5,000,000]."

14  *Muniz*, 2007 U.S. Dist. LEXIS 31515 at *15.  Here, as in *Muniz*, Defendants have

15  presented competent evidence of all the factors necessary to determine the amount in

16  controversy based on Plaintiff's allegations.  This evidence was presented through

17  the declaration of an employee with knowledge of and access to all pertinent payroll

18  and employment data for the state of California, including the number of California

19  employees in the class defined by Plaintiff, their hourly rates, and the amount of time

20  each employee worked.  These facts are accurately summarized and reported in the

21  Declaration of Brenda Gerczak.  Plaintiff has presented no evidence or argument that

22  would draw the accuracy of the data in the Gerczak Declaration into question, nor

23  can he.

24  **5.    Defendants' Properly Limited their Calculations to Distinctly**

25  **Quantifiable Sub-Groups of the Class to Improve Accuracy.**

26  Lastly, Plaintiff claims in his Motion that "Defendants used the wrong hourly

27  wage for all prospective class members." (Plaintiff's Memo p. 10.)  Plaintiff is

28  challenging the fact that, when calculating the estimated amount in controversy for

Defendants' Opposition to Motion for
Remand to State Court

1   the meal-period and rest-period claims, Defendants chose to "simplify the

2   calculation" by "conservatively limit[ing] [their] consideration to one group of

3   employees in the State of California, namely Pick Up and Delivery Drivers." (Notice

4   of Removal ¶ 18.)  Because Defendants limited the calculation of meal-and-rest-

5   period penalties to a subset of employees (i.e., P&D Drivers), Defendants based their

6   calculation of penalties upon the average wage for P&D Drivers.

7        In his Motion, Plaintiff cites *Helm v. Alderwoods Group, Inc.*, 2008 WL

8   2002511, *4 n.3 (N.D. Cal. May 7, 2008) for the proposition that it is "preferable for

9   defendants to calculate the average hourly wage based on the average wage of *all*

10   class members." *Id.* (emphasis supplied by Plaintiff).  In essence, Plaintiff claims

11   that the Court should ignore the actual average wage of a distinct job classification

12   included in the putative class in favor of an inaccurate average wage, which bears

13   little if any relationship to the damages that Plaintiff will actually seek in this case.

14   There is no doubt that if the Plaintiff prevailed on a class claim, he and the class

15   members would seek damages based on their actual hourly wage, not on a blended

16   hourly rate based on employees in different job classifications.  That is to say, the

17   formula used by Defendants, which focuses on the actual wages of a subset of the

18   putative class, arrives more closely at the actual amount in controversy than the

19   formula suggested by the Plaintiff, which essentially ignores that there are different

20   damages calculations for different job classes.

21        Moreover, the *Helm* case cited by Plaintiff does not actually hold that it is

22   necessary to average the wages of all potential class members.  Rather, the court only

23   stated, in dicta, that it would have been preferable to do so in that case.  Of greater

24   significance, however, is the actual holding of the court, which approved of the

25   defendant using only the hourly rates of the 27 named plaintiffs to arrive at an

26   average hourly rate for the entire class (which was estimated at over 1000

27   employees) for the purpose of determining the amount in controversy under CAFA.

28   *Id.*  Needless to say, the average hourly rate used by Defendants is more accurate

13                                    Defendants' Opposition to Motion for
                                     Remand to State Court

1  than the average actually approved by the Court in *Helm*.

2      This particular argument by Plaintiff is somewhat baffling because Plaintiff is

3  basically arguing that Defendants' calculation is not accurate because it does not

4  include all of the possible class members in different job classes.  Obviously, if

5  Defendants had done as Plaintiff proposes, the amount in controversy would be

6  substantially greater than the figures presented in the Notice of Removal.

7  **B.**    **Plaintiff Has Failed To Prove That The Local Controversy Exception**

8      **Applies.**

9      Plaintiff claims that the local controversy exception to CAFA applies because

10  Estes West is registered in California.  Plaintiff's argument fails, however, because

11  he cannot establish or prove the necessary elements of the local controversy

12  exception.

13      According to 28 U.S.C. § 1332(d)(4)(A), to establish application of the local

14  controversy exception, a Plaintiff must prove each of the following:

15
16      (I)    greater than two-thirds of the members of all proposed plaintiff
    classes in the aggregate are citizens of the State in which the
17      action was originally filed;

18      (II)    at least 1 defendant is a defendant—
    (aa)    from whom significant relief is sought by members of the
19      plaintiff class;

20      (bb)    whose alleged conduct forms a significant basis for the
    claims asserted by the proposed plaintiff class; and

21      (cc)    who is a citizen of the State in which the action was
22      originally filed; and

23      (III)    principal injuries resulting from the alleged conduct or any related
    conduct of each defendant were incurred in the State in which the
24      action was originally filed; and

25      (ii)    during the 3-year period preceding the filing of that class action,
    no other class action has been filed asserting the same or similar
    factual allegations against any of the defendants on behalf of the
26      same or other persons[.]

27

28      "All four criteria must be satisfied for the exception to apply.  Thus, if any one

14

1  of the four criteria is not met, remand should be denied." *Sanchez v. Aviva Life &*
2  *Annuity Co.*, 2009 U.S. Dist. LEXIS 79712 at *7 (E.D. Cal. 2009).

3       Because the local-controversy exception is a "narrow one," the Court should
4  resolve "all doubts … in favor of exercising jurisdiction over the case.'" *Id.*  A
5  plaintiff seeking remand bears the burden of establishing that an exception to CAFA
6  jurisdiction applies. *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1019 (9th Cir.
7  2007) (joining all other circuits that have addressed this issue in holding that the
8  party seeking remand bears the burden of establishing the exceptions to CAFA
9  jurisdiction).

10      **1.**    <u>**Plaintiff's Motion to Remand is Facially Insufficient**</u>

11       As a threshold matter, Plaintiff did not allege, discuss, or even mention the
12  requirement that the conduct of the alleged in-state defendant, Estes West, must form
13  a "significant basis" of the claims for which Plaintiff seeks "significant relief," nor
14  did Plaintiff provide any evidence as to this issue on which he bears the burden of
15  proof.  In fact, Plaintiff actually lists the requirements of the local controversy
16  exception in his Motion, citing to 28 U.S.C. § 1332(d)(4)(A), yet mysteriously omits
17  subsections (aa) and (bb) under sub-section (II).  (Plaintiff's Memo p. 8.)  Thus,
18  Plaintiff's Motion to Remand is facially deficient and should be summarily denied.
19  *Compare Evans v. Walter Indus.*, 449 F.3d 1159, 1167 (11th Cir. 2006) ("Plaintiffs
20  rely on their complaint and an attorney affidavit to establish that U.S. Pipe is a
21  significant defendant.  These documents, however, do not provide any enlightenment
22  at all with respect to the significance of the relief that is sought against U.S. Pipe, or
23  its comparative significance relative to the relief sought from the other 17 named co-
24  defendants."); *Cox v. Allstate Ins. Co.*, 2008 U.S. Dist. LEXIS 41272, *11 (W.D. Ok.
25  2009) ("Based on this standard, the court finds plaintiffs have failed to carry their
26  burden.  Rather than presenting evidence regarding the elements at issue, plaintiffs
27  offer only the conclusory statement that" the in-state defendant is significant).
28  //

Defendants' Opposition to Motion for
Remand to State Court

381833.1

**2.** **Plaintiff Does Not Seek, and Cannot Obtain, "Significant Relief"**

**From the Alleged "In-State Defendant," Estes West**

Even if Plaintiff had attempted to, he would not be able to demonstrate that the class members in this case seek significant relief from Estes West, because, as explained below, any relief obtained would necessarily come exclusively from out-of-state defendant Estes Express. "The terms 'significant relief' and 'significant basis' are not defined in the statute." *Waters v. Advent Prod. Dev.*, 2008 U.S. Dist. LEXIS 50686, 13 (S.D. Cal. 2008) (denying plaintiff's motion to remand based upon the local-controversy exception). "[C]ourts have concluded that 'significant relief' refers to instances where the relief sought against a particular defendant is a significant portion of the total relief sought by the whole class." *Id.* (citing *Escoe v. State Farm Fire & Cas. Co.*, 449 F.3d 1159, 2007 U.S. Dist. LEXIS 30088 (E.D. La. 2007) (denying plaintiff's motion to remand based upon the local-controversy exception). "This involves an assessment of how many members of the putative class were allegedly harmed by the in-state defendant and a comparison of the relief sought between all defendants and each defendant's ability to pay a potential judgment." *Escoe*, 2007 U.S. Dist. LEXIS 30088 at *7. *See also Evans v. Walter Indus.*, 2006 App. LEXIS 12509 (11th Cir. 2006).

Courts have *emphasized* that if the in-state defendant is unable to pay a potential judgment, then the plaintiff cannot satisfy the requirement of "significant relief." *See Id.* For example, in *Green v. SuperShuttle Int'l, Inc.*, 2010 U.S. Dist. LEXIS 7456 (D. Minn. Jan. 29, 2010), a putative class of employees sued their Minnesota employer and its parent company seeking to recover unpaid wages, employee benefits, and restitution for violations of the Minnesota Fair Labor Standards Act. The district court discussed whether the plaintiff sought significant relief from the in-state employer defendant, SuperShuttle Minnesota, as compared to its out-of-state parent company, SuperShuttle International, holding as follows:

SuperShuttle Minnesota is almost entirely dependent on SuperShuttle

16

International for its continued viability. As a result, it is unlikely SuperShuttle Minnesota could satisfy a judgment rendered against it if Plaintiffs prevailed. When the Court compares each Defendant's apparent ability to satisfy a judgment, it is clear that Plaintiffs do not seek "significant" relief from SuperShuttle Minnesota. The lion's share of any putative judgment would likely be borne by SuperShuttle International, a resident of Delaware, and SuperShuttle Franchise, a resident of Arizona. Therefore, the third element of the "local controversy" exception is not fulfilled.

*Id.* at *10.

In this case, the alleged in-state defendant, G.I. Trucking, Inc., d/b/a Estes West, is a wholly-owned subsidiary of Estes Express, a Virginia Corporation, and has been a subsidiary since 2005, when Estes Express completed its purchase of 100% of the shares in Estes West. Since 2005, Estes West has been operated as an internal regional division of Estes Express, just like the current Southeast, Southwest, Northeast, and Upper Midwest regions of Estes Express, none of which are incorporated. See the concurrently filed Second Declaration of Brenda Gerczak ¶ 7 (hereinafter referred to as "2d Gerczak Declaration"). Similar to the other Estes regions, Estes West has no source of revenue other than the operating funds supplied by Estes Express. (2d Gerczak Declaration ¶ 6). It is completely dependent on Estes Express for its continued viability. All revenue for Estes' trucking operation is derived from bills submitted to customers who use Estes to transport freight. Like all other Estes regions, all bills for the services rendered in the Estes West region are billed to customers by Estes Express through its billing operation in Richmond, Virginia. (Id. ¶¶ 6-7.) In turn, all monies paid by customers are paid directly to Estes Express, and are retained by Estes Express except for, with regard to Estes West, the monies needed to fund the payroll account for Estes West. (Id.) Were it not for California law requiring payroll to be run through a California bank account, Estes Express would simply pay California employees out of its own account rather than make weekly deposits to the payroll account in California. (Id. ¶ 5.) Because Estes West has no source of revenue, it has no funds to satisfy a significant judgment. (Id.) If a judgment was awarded against both Defendants in this action,

17

1   only Estes Express would have the funds to pay the judgment.  (Id.)  In short, Estes

2   West gathers no revenues, pays no bills and does not pay its employees, but for

3   money directly from Estes Express.  As in *Green v. SuperShuttle*, Plaintiff therefore

4   does not, and cannot, seek "significant relief" from the alleged in-state defendant,

5   Estes West.

6   **3.**      **The Conduct of Estes West Does Not Constitute a "Significant**

7               **Basis" for the Claims in This Lawsuit**

8         Not only can Plaintiff not meet the first requirement under sub-section (II) of

9   28 U.S.C. § 1332(d)(4)(A), to establish the existence of the local controversy

10  exception, but he also cannot meet the second requirement because the conduct of

11  Estes West does not form a "significant basis" for the claims pleaded in this lawsuit.

12  "The word 'significant' is defined as 'important, notable.'  Oxford English

13  Dictionary (2d ed. 1989).  For the local controversy exception to apply, the local

14  defendant's alleged conduct must be an important ground for the asserted claims in

15  view of the alleged conduct of all the defendants."  *Kaufman v. Allstate N.J. Ins. Co.*,

16  561 F.3d 144, 157 (3d Cir. 2009).  "The significance of the local defendant's alleged

17  conduct must always be assessed in comparison to the alleged conduct of all the

18  defendants."  *Id.*

19        In this case, Estes Express is <u>solely</u> responsible for all the acts, decisions,

20  practices, and procedures that the Plaintiff claims are unlawful.  Estes Express

21  performs and directs every payroll function for Estes West.  (2d Gerczak Declaration

22  ¶ 3.)  It controls every decision related to payroll, working hours, job duties, job

23  classifications and other terms of employment for California employees that relate in

24  any way to the claims alleged in Plaintiff's Complaint.  (Id. ¶¶ 3-4.)  Estes Express

25  establishes the pay periods, pay days, and pay rates for all employees in California

26  and elsewhere in the Estes West region.  (Id. ¶ 3.)  Estes Express drafts the payroll

27  checks for employees in California.  (Id.)  Estes Express determines the contents of

28  the pay stubs that are distributed to California employees.  (Id.)  Estes Express sets

18                    Defendants' Opposition to Motion for
                      Remand to State Court

1   policy and determines and controls the process and procedures for employees to take

2   meal and rest breaks in California.  (Id.)  Estes Express determines whether

3   employees in the Estes West region will be classified as exempt from overtime

4   requirements based on job functions.  (Id.)  Estes Express determines the very job

5   functions of employees that factor into exemption decisions.  (Id.)  Estes Express

6   also sets and enforces the timing of final paychecks that are provided to California

7   employees upon separation from employment. (Id.)  In fact, Estes Express is the only

8   source of funds for payroll for Estes West.  (Id. ¶¶ 5-6.)  Estes West would have no

9   way to make payroll unless Estes Express funded its payroll account.  (Id.).

10          Since its acquisition of G.I. Trucking Company in 2005, Estes Express has

11   coordinated the lay-off of all but one employee who worked in the former G.I.

12   Trucking Company payroll department.  (Id. ¶ 3.)  At present, there is one payroll

13   analyst working for Estes in California.  (Id.)  She has no authority to determine pay

14   practices or to vary from policy or practices set by Estes Express.  (Id.)  She

15   performs minor clerical functions.  (Id.)  This sole payroll analyst reports directly to

16   the Payroll Manager for Estes Express in Richmond, Virginia.  (Id.)  The Payroll

17   Manager and Human Resources Department for Estes Express in Richmond has

18   exclusive responsibility for enforcing payroll policy and ensuring payroll obligations

19   are met for Estes' California employees.  (Id.)

20          Furthermore, Estes Express maintains control over all terms of employment

21   for all Estes employees, including those in California.  (Id. ¶¶ 3-4).  Estes Express

22   adopts all employment policies and practices for Estes Employees in California.

23   Estes Express drafted and adopted the employee handbook that is used in the Estes

24   West region. (Id. ¶ 4.)  Estes Express selects and provides all benefits that are

25   available to California Estes employees.  (Id.)  Estes Express sponsors and

26   administers all current employee benefit plans for all Estes employees, including all

27   those in California.  (Id.)  Estes Express determines what group benefits plans will be

28   offered to all employees of Estes, including California employees; Estes Express

381833.1

1   makes all decisions with regard to benefit plan amendments, elimination of benefits,

2   and the nature and scope of benefits provided by policy, such as vacation, sick leave,

3   and holiday pay. (Id.)  Estes Express determines the job functions and adopts the job

4   descriptions for every employment position in the State of California.  (Id.)

5          Since Estes Express completed its acquisition of Estes West in 2005, business

6   conditions and various operational decisions made by Estes Express have

7   necessitated a reduction in the number of employees working for Estes in California.

8   (Id.)  Estes Express made all decisions regarding the selection criteria and actual

9   selection of employees for elimination as a result of these reductions in force.  (Id.)

10  Estes Express makes all decisions with regard to whether severance benefits will be

11  offered to groups of employees whose positions are eliminated and pays such

12  benefits when offered.  (Id.)  Estes West has no influence on any such employment

13  related decisions.  (Id.)  All such decisions are made by the Human Resources

14  Department for Estes Express in Richmond, Virginia.  (Id.)

15         Estes West has no human resources department and has no benefits

16  department.  (Id.)  There is a regional human resources manager assigned to the Estes

17  West region, but she reports directly to the Director of Human Resources for Estes

18  Express in Richmond, Virginia.  In this regard Estes West functions exactly the same

19  as the other regions of Estes Express, where regional human resource managers are

20  assigned and report to the Director of Human Resources in Virginia.  (Id.)  Local

21  managers in the Estes West region give day to day instructions to employees, but

22  such instructions are given strictly within the operating rules and guidelines

23  established by Estes Express in Virginia.  (Id.).  In sum, Estes Express possesses and

24  maintains complete control over every significant term of employment for every

25  Estes employee in the State of California.

26         Further demonstrating the integration of Estes West into Estes Express, Estes

27  West does not hold board meetings.  (Id. ¶ 7.)  It does not have its own business plan,

28  it does not establish its own budget, and it does not otherwise operate independently

Defendants' Opposition to Motion for
Remand to State Court

1  from Estes Express. (Id.)  The only functioning officer position in the Estes West

2  region is the position of Regional Vice President. (Id. ¶ 8).  The Regional Vice

3  President of Estes West is on the same level and holds the same job functions as all

4  other Regional Vice Presidents employed by Estes Express in its other non-

5  incorporated regional divisions. (Id.)  In fact, the Regional Vice President for the

6  Estes West Region is on the Estes Express payroll. (Id.)  All Regional Vice

7  Presidents, including the Regional Vice President for the Estes West region, report to

8  the Vice President of Sales and the Vice President of Operations for Estes Express

9  Lines.  They also have a direct line report to Estes Express Lines' Executive Vice

10  President. (Id.)  The Regional Vice President over the Estes West region has no

11  authority to establish policy, to make company wide or regional operational

12  decisions, or to otherwise direct Estes' operations.  Any such decisions require

13  approval or action by an Estes Express employee or officer with supervisory

14  authority over the Estes West regional vice president. (Id.)

15       In any way that is relevant to Plaintiff's claims, Estes West is completely

16  integrated into Estes Express Lines.  It cannot and does not function independently of

17  Estes Express.  It functions as an internal division, or region, of Estes Express.  Estes

18  West exercises no discretion in matters of payroll practices or other matters

19  concerning human resources.  It is completely subsumed within Estes Express.

20  Therefore, the conduct of Estes Express, not Estes West, forms the significant,

21  indeed the sole, basis of Plaintiff's claims.  In this regard, the case is similar to

22  *Kearns v. Ford Motor Co.*, 2005 U.S. Dist. LEXIS 41614 (C.D. Cal. 2005), in which

23  the district court emphasized that when a large parent company "promulgates and

24  oversees the overall alleged[ly]" unlawful conduct, which is merely "implemented"

25  by the local company, then the local company's actions do not constitute a

26  "significant basis" for the claims involved in the lawsuit.

27  //

28  //

Defendants' Opposition to Motion for
Remand to State Court

381833.1

1       **4.**       <u>**G.I. Trucking, Inc. d/b/a Estes West is Not a California Citizen, But**</u>

2              <u>**a Citizen of Virginia for Purposes of Diversity Under CAFA**</u>

3       As stated, Plaintiff's Motion to Remand is silent regarding the requirements

4 for the local controversy exception discussed above.  Rather, Plaintiff simply argues

5 in his Motion that the exception applies because Estes West is a citizen of California

6 for diversity purposes.  Not only is this not enough to meet his burden of proof to

7 demonstrate that the exception applies, but it is not even accurate.  Estes West is not

8 a citizen of California for the purpose of determining diversity of citizenship.

9       Plaintiff relies on Defendants' "silence" with respect to the citizenship of G.I.

10 Trucking (Estes West) and the entity's registration with the California Secretary of

11 State to prove Estes West's California citizenship.[9]  Plaintiff fails, however, to

12 consider Estes West's role as an integrated subsidiary and alter ego of Estes Express

13 Lines, a Virginia Corporation.

14       The general rule observed in the Ninth Circuit is that "in a suit involving a

15 subsidiary corporation, the court looks to the state of incorporation and principal

16 place of business of the subsidiary, and not its parent" for purposes of determining

17 diversity of citizenship.  *Danjaq, S.A. v. Pathe Communications Corp.*, 979 F.2d 772,

18 775 (9th Cir. Cal. 1992).  However, in *Danjaq*, the Ninth Circuit recognized an

19 exception to this rule, noting that in cases where the subsidiary is the *alter ego* of the

20 parent corporation, courts view the formal separateness between the two corporations

21 as merely a legal fiction and the citizenship of the parent corporation is imputed to its

22 subsidiary.  *Id.* (citing *Burnside v. Sanders Ass'n, Inc.*, 507 F. Supp. 165, 166 (N.D.

23 Tex. 1980), aff'd, 643 F.2d 389 (5th Cir. 1981); *See also China Basin Properties,*

24 *Ltd. v. One Pass*, Inc., 812 F. Supp. 1038 (N.D. Cal. 1993) (courts may "pierce the

25 corporate veil" and disregard the separate corporate existence of a subsidiary for

26 ─────────────────────

27 [9] Notably, the print out from the California Secretary of State's website proffered by Plaintiff to prove Estes West's California citizenship lists Estes Express Lines' 3901 W. Broad Street address

28 in Richmond, Virginia as the "entity address" of G.I. Trucking (Estes West).

381833.1

1   diversity purposes if the corporation fails to observe the formalities of corporate
2   separation).

3        In *Burnside*, the United States District Court for the Northern District of Texas
4   held that the exception to the general rule applies and the subsidiary takes the
5   citizenship of the parent, when the subsidiary is not really a "separate entity." *Id.*
6   (internal citations omitted). The Court further held that whether a subsidiary is a
7   separate entity is a question of fact, and that in making that determination courts
8   consider: (1) the degree of control exercised by the parent, (2) the relationship
9   between parent and subsidiary activities, (3) the membership of the Board of
10  Directors, and (4) the maintenance of separate corporate books. *Id.* (citing Wright,
11  Miller, and Cooper, Federal Practice and Procedure: Civil, § 3625 at 802 (1975)).
12  *See also Cannon Manufacturing Co. v. Cudahy Packaging Co.*, 267 U.S. 333, 45 S.
13  Ct. 250 (1925) (where the Court held that through ownership of the entire capital
14  stock, a parent corporation dominated its subsidiary and exerted control both
15  commercially and financially); *Frazier v. Alabama Motor Club*, 349 F.2d 456 (5th
16  Cir. 1965) (where the court found that a subsidiary's corporate identity could be
17  ignored where the corporate activities were managed, directed, and completely
18  controlled by the parent corporation); *Laborer's Clean-Up Contract Administration*
19  *Trust Fund v. Uriarte Clean-Up Service, Inc.*, 736 F. 2d 516, 524 (9th Cir. 1984)
20  (evidence that a parent corporation makes interest free loans without observing
21  corporate formalities by documenting these loans with promissory notes supports a
22  finding that an alter ego relationship exists).

23       The courts that have declined to apply the alter ego theory to determine a
24  subsidiary's citizenship have done so based on facts that established a certain level of
25  autonomy on the part of the subsidiary. No such autonomy exists in the instant case.
26  As addressed above, Estes Express, a Virginia Corporation, completed acquisition of
27  one hundred percent of Estes West in 2005, and has since operated Estes West as a
28  regional division of Estes Express Lines and has complete control over all of the

23

1   corporate functions of Estes West.  (2d Gerczak Declaration ¶ 7.)  The Board of

2   Directors of Estes West is comprised of employees of Estes Express.  (Id.)  Estes

3   West holds no board meetings, and its officers make no policy decisions or take other

4   action to operate Estes West separate from Estes Express.  (Id.)  In fact, all of the

5   policy and operational decisions are made by managers employed by Estes Express

6   who regulate the business operations at Estes West the same as any other region of

7   Estes Express.  (Id. ¶ 8.)  The purpose, activities and operations of Estes West and

8   Estes Express are identical – namely the transportation of freight.  (Id. ¶ 7.)  Estes

9   Express makes no effort to distinguish Estes West from Estes Express before the

10  general public.  Moreover, since Estes Express acquired G.I. Trucking, Estes Express

11  has purchased all the equipment for use in the Estes West region, such as trucks and

12  trailers used in transporting freight.  (Id.)  Estes Express performs all maintenance on

13  this equipment.  (Id.)  Unlike in *Burnside*, no employee at Estes West has the

14  authority to set salaries or define corporate objectives.  As mentioned, Estes West has

15  only a Regional Vice President who operates like every other Regional Vice

16  President of Estes Express.  While Estes West maintains a bank account for payroll

17  purposes this account was set up only to comply with the requirement under

18  California law to do so.  (Id. ¶ 5.)  The account is funded entirely by Estes Express

19  with weekly deposits that are used to meet payroll obligations.  (Id.)  Estes West does

20  not even file its own tax return.  A consolidated tax return is filed for Estes Express

21  Lines and Estes West.  (Id..  Further, all financial and accounting information for

22  Estes West is managed and maintained in Richmond, Virginia by Estes Express'

23  Chief Financial Officer.  (Id. ¶ 8.)

24       Estes West does not prepare its own budget, does not have its own business

25  plan, does no corporate planning at all, and in no other way acts independently of

26  Estes Express or as an autonomous legal entity.  (Id. ¶ 7.)  All of the operating funds

27  for Estes West are supplied by Estes Express and come from the corporate revenue

28  of Estes Express. (Id. ¶ 6.)

Defendants' Opposition to Motion for
Remand to State Court

1   Based on the foregoing law and facts, it is indisputable that Estes West is the

2 alter ego of Estes Express Lines.  Estes West is completely integrated into Estes

3 Express as a regional division.  As such, it should be deemed a citizen of Virginia for

4 the purpose of determining diversity of citizenship.  Accordingly, there is no local

5 defendant, and the local controversy exception to CAFA cannot apply.

6                    ### III.  CONCLUSION

7   By using methodology that has been approved by the California Federal

8 Courts, Defendants have shown, by a preponderance of the evidence, that the amount

9 in controversy exceeds five million dollars and that federal jurisdiction under CAFA

10 is proper.  Plaintiff, however, has failed to prove that the local controversy exception

11 applies and that a remand should be granted.  Therefore, this Court should retain

12 jurisdiction of the matter and deny Plaintiff's Motion to Remand.

13

14 Dated:  May 24, 2010          CARLTON DiSANTE & FREUDENBERGER LLP
                                 Timothy M. Freudenberger
                                 Sarah N. Drechsler
15

16

17                              By: /s/Sarah N. Drechsler
                                        Sarah N. Drechsler

18                              - and -

19                              POYNER SPRUILL LLP
                                 David L. Terry
20                               David L. Woodard

21                              Attorneys for Defendants
                                ESTES EXPRESS LINES and G.I. TRUCKING
22                              COMPANY dba ESTES WEST

23

24

25

26

27

28

25          Defendants' Opposition to Motion for
            Remand to State Court

381833.1